lml

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARK EPSTEIN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| v. ) | **Case No. 03-4081-JAR** |
| ) | |
| **DAVID C. WITTIG, et al.,** ) | |
| **Defendants.** ) | |
| ) | |
| **WESTAR ENERGY, INC.** ) | |
| ) | |
| **Nominal Defendant.** ) | |
| ) | |

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on Douglas J. Cafer's ("Cafer") Motion for Reconsideration and to Alter or Amend Judgment Approving Proposed Settlement (Doc. 95) as well as his Motion to Conduct Limited Discovery (Doc. 101) and Motion to Strike Portions of Westar's Opposition thereto (Doc. 107). For the reasons explained below, the Court finds Mr. Cafer's arguments to be without merit and denies his motions.

**I.   Background**

After many months of mediation, the parties to this derivative action filed a Stipulation and Agreement of Compromise, Settlement and Release with this Court on May 31, 2005. Net funds from the $12.5 million settlement will be contributed to the $30 million settlement of the companion securities class action, *In re Westar Energy, Inc. Securities Litigation*, Case No. 03-4003-JAR. On June 6, 2005, the Court entered an order preliminarily approving the stipulation and settlement and directing notice to be sent to registered shareholders on or before June 23,

2005.  Summary Notices of Proposed Settlement were also published in the national edition of the *Wall Street Journal* and local editions of *The Kansas City Star*, *The Topeka Capital Journal* and *The Wichita Eagle*.  The Notice of Proposed Settlement contained the following release language:

> If the Settlement is approved, Plaintiffs on behalf of themselves, their heirs, executors, administrators, successors and assigns and all other stockholders of Westar during the time of the events alleged in the Complaint, and Westar in its own right (the "Releasors"), shall be deemed to have fully, finally and forever released, relinquished and discharged each and every derivative or direct claim, right, cause of action and right to seek recovery for liabilities, damages, losses, attorneys' fees, costs or expenses, whether suspected or unsuspected, matured or unmatured, including both known and Unknown Claims, and whether based on federal, state or local statutory or common law, or any other rule or regulation that both: (i) has been, or could have been, asserted in the Action by Plaintiffs, derivatively, or could have been alleged by Westar directly; and (ii) arises out of, or is in any way based upon, connected with or related to any fact, matter, transaction, prospectus, registration statement, proxy statement, annual report (initial or restated), quarterly earnings report (initial or restated), press release or other report or other publicly disseminated documents or public statements of Westar alleged in the Complaint relating to any period prior to July 30, 2003 (the "Settled Claims"), against any of the Individual Defendants and each of their respective families, heirs, executors, trustees, personal representatives, estates or administrators, attorneys, insurers, reinsurers, counselors, financial **or investment advisors**; against Westar; against Westar's predecessors, parents, subsidiaries, present or former officers, directors, employees, **co-venturers, agents, attorneys,** insurers, reinsurers, **representatives** and affiliates (within the meaning of Rule 12b-2 of the Securities and Exchange Act of 1934), successors and assigns; . . . . (emphasis added).

On August 10, 2005, Mr. Cafer filed an Objection to Proposed Settlement (Doc. 86), which challenges the scope of the release.  Specifically, Cafer objected to the language highlighted above, as it "arguably" included release of the shareholders' claims against

2

individuals who are not defendants in this action and have paid no consideration for the release, including the law firm of Cahill Gordon & Reindel ("Cahill Gordon").  Mr. Cafer also requested the opportunity to be heard on his objection, but did not seek leave from the Court at that time to conduct discovery.

On August 25, 2005, counsel for nominal defendant Westar Energy, Inc. ("Westar") filed a Response to the Objection of Douglas J. Cafer (Doc. 88), and mailed a copy to Cafer.  On August 31, 2005, the response was returned to Westar's counsel without any indication as to why it was being returned.  Counsel then caused a copy of the response to be hand-delivered to Cafer's house the same day.  The response stated that the plain language of the release provides, and was intended to provide, a broad release in order to bring a conclusion to the burdensome litigation of claims that were or could have been asserted by plaintiffs derivatively or Westar directly, including certain of Westar's legal, compensation and financial advisors.  The response noted that the release contains specific exceptions: the arbitration proceedings against David Wittig and Douglas Lake, any claims arising from the alleged misuse of the company's aircraft, and the ERISA case pending before this Court.[1]  The response states that nothing in Cafer's objection outweighed the overall fairness, reasonableness and adequacy of the proposed Settlement, and contends that Cafer's objection included only vague, conclusory complaints regarding professional advisors, did not even attempt to demonstrate that the judgment of the Litigation Evaluation Committee ("LEC") to settle this action should be overturned, nor set forth a reasonable basis for the assertion of claims against any outside advisors.

On September 1, 2005, the final settlement hearing was held before this Court.  Glenda

---

[1] *In re Westar Energy Inc. ERISA Litigation*, Case No. 03-4032-JAR.

Cafer and Grant Glenn entered appearances on behalf of Cafer that day, and Ms. Cafer argued on his behalf at the hearing. The Court also heard from Richard H. Weiss, counsel for plaintiffs, regarding the Settlement and application for attorneys' fees, and Bruce Angiolillo, independent counsel for the company's LEC.

At the hearing, counsel for Mr. Cafer specifically stated that he was not objecting to the settlement or the requested attorneys' fees, but only the scope of the release. Counsel for Mr. Cafer argued that: (1) under *Comeau v. Rupp*,[2] the Court lacked subject matter jurisdiction to enter an order approving a release from liability as to entities and claims not before the Court as actual cases in controversy; (2) the Notice of Settlement was inadequate in that it failed to clearly identify other claims the company may have against unnamed entities, failed to clearly state those claims were being released as part of the agreement, and failed to inform shareholders of the likely impact of the releases on claims being retained; and (3) the process used to secure approval of this aspect of the Settlement agreement denied Mr. Cafer his due process rights as a shareholder of the company. Counsel stated that Mr. Cafer was "aware that there was litigation that was being explored and prepared against third parties who had allegedly assisted management in the wrongdoing that occurred and the damages that the company suffered as a result of it."[3] Counsel referred the Court to various public records and cited the company's internal investigatory report prepared by Debevoise and Plimpton and its related exhibits, Westar's arbitration proceedings, and testimony from the criminal trial of David Wittig and

---

[2] 810 F. Supp. 1127 (D. Kan. 1992).

[3] Tr. of Sept. 1, 2005, at 12-13.

Douglas Lake as evidence of causes of actions against others, including Cahill Gordon.[4]

The Court overruled Cafer's objection and approved the settlement of this action as well as the shareholder class action as fair, reasonable and adequate. The Court rejected Mr. Cafer's claim that it lacked subject matter jurisdiction to approve a release of the company's claims against unnamed parties, distinguishing the *Comeau* case that involved named parties and release of claims that had not been brought for or against those parties. The Court noted that it had not heard any colorable claims against Cahill Gordon, but even if it had, the settlement remained fair, reasonable and adequate.

This motion followed, requesting the Court reconsider its findings and amend its order to exclude from the settlement any release from liability from any individual or entity not a party to this litigation. Westar filed its opposition and, in response, Mr. Cafer moved to conduct discovery. All defendants have joined Westar in opposition to both the motion for reconsideration as well as the discovery request.

**II.     Standard**

Mr. Cafer moves pursuant to Fed. R. Civ. P. 59(e) and D. Kan. Rule 7.3(a) for reconsideration and to alter or amend the Judgment Approving Proposed Settlement entered September 1, 2005. Rule 7.3(a) provides that "[m]otions seeking reconsideration of dispositive orders or judgments must be filed pursuant to Fed. R. Civ. P. 59(e) or 60." A motion to reconsider filed within ten days of entry of final order or judgment is treated as a motion to alter or amend pursuant to Rule 59(e).

Relief under Rule 59(e) is warranted based on an intervening change in the controlling

---

[4]*Id*. at 18-19, 29.

law, new evidence previously unavailable, and the need to correct clear error or prevent manifest injustice.[5] A Rule 59(e) motion is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.[6] Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[7] The law in this circuit is clear that a Rule 59(e) motion "cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment."[8] Rule 59(e) motions

> are aimed at *re*consideration, not initial consideration.  Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued.  Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence.[9]

### III.    Discussion

Mr. Cafer contends that his Rule 59(e) motion alleges clear error and manifest injustice, and gives the Court the opportunity to "thoroughly consider the arguments of Mr. Cafer and correct errors which occurred at hearing on the settlement." On the contrary, the Court finds that Mr. Cafer merely repeats arguments considered and rejected by the Court and now seeks to supplement his arguments with a 37-page memorandum with numerous exhibits setting forth

---

[5]*Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[6]*Id*.

[7]*Brown v. Presbyterian Healthcare Serv.,* 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied*, 520 U.S. 1181 (1997).

[8]*Steele v. Young*, 11 F.3d 1518, 1520 n..1 (10th Cir. 1993); *see also* Charles Alan Wright, et al., *Federal Practice and Procedure:* Civil 2d § 2810.1 ("The Rule 59(e) motion may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

[9]*Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.,* 37 F.3d 25, 29 (1st Cir. 1994) (internal quotation marks omitted).

facts from the Debevoise Report, Westar's arbitration proceedings against Wittig and Lake and the criminal trials against both men, an 18-page reply memorandum, and a motion to conduct discovery.  Mr. Cafer's motion for reconsideration makes the same legal arguments as presented at the September 1, 2005 fairness hearing, along with an expanded discussion of the same public records referred to at the hearing.  The law is clear that "rehash[ing] arguments previously addressed or present[ing] new legal theories or facts that could have been raised earlier is not permitted by Rule 59(e)."[10]  The Court is especially troubled by Mr. Cafer's failure to brief or address these arguments in detail at or prior to the September 1, 2005 hearing, despite having ample notice, despite having requested to be heard at that time, and despite his purported knowledge of discussions of a possible derivative suit against outside counsel.  Nonetheless, the Court is compelled to briefly address the issues raised by Mr. Cafer.

### A.   Subject Matter Jurisdiction

Mr. Cafer maintains that the Court lacks subject matter jurisdiction over claims against persons not named as parties in the litigation being settled.  In support of this claim, Mr. Cafer continues to rely on the *Comeau* decision, where the district court was asked to approve the settlement of a suit brought by the FDIC against a defendant bank.[11]  As a condition to that settlement, the bank sought a release for itself from potential claims for indemnification that might be brought against it by certain non-settling parties.[12]  The court held in that circumstance

---

[10]*Brown*, 101 F.3d at 1332.

[11]810 F. Supp. at 1127.

[12]*Id*. at 1163.

that it lacked subject matter jurisdiction to release the potential claim of a non-settling party.[13]

That is not the circumstance of this case, where a party to the settlement is releasing its *own*

claims, those asserted, and those it could have asserted arising from the same facts.

As the Court noted at the September 1, 2005, hearing, it is routine for courts to approve

settlements with broad releases of claims arising out of the facts and circumstances that were or

could have been asserted in the case.[14]  More specifically, litigants in shareholder class actions

and derivative suits may release both the named defendants as well as unnamed parties with

respect to asserted or unasserted claims arising out of the same underlying facts.[15]  Certainly, any

claims against outside advisors, including Cahill Gordon, fall within this category as they arise

out of the misfeasance or malfeasance of Westar's former officers and directors.  Thus, the Court

does not lack subject matter jurisdiction to enter the order approving the release in this case.

**B.     Notice of Settlement**

Mr. Cafer continues to argue that the Notice of Settlement was (1) unclear, and (2)

inadequate because it did not state that there were potential claims against the non-parties, that

there was a theoretical possibility of recovery, that the non-parties were being released, and that

the release might have a negative impact.  Neither argument has merit.

First, Mr. Cafer claims that he did not understand the Notice to inform him that the

settlement would release Cahill Gordon.  The release language, which was set forth verbatim in

the Notice and repeated by Mr. Cafer in his initial objection, specifically states that Westar

---

[13]*Id.* at 1164.

[14]*See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 109 (2d Cir. 2005) and cases cited therein.

[15]*Id.*

8

releases its "predecessors, parents, subsidiaries, present or former officers, directors, employees, co-venturers, agents, *attorneys*, insurers, reinsurers, representatives . . . , successors and assigns."[16]  It was this language that prompted Mr. Cafer to object on the grounds that the release language is "drafted so broadly as to arguably include the release of the shareholder's claims against the above individuals [including Cahill Gordon] who are not defendants in this action. . ."  The Court finds it disingenuous of Mr. Cafer to claim that he did not understand this language to mean the settlement would release Westar's counsel.  Indeed, Mr. Cafer purports to know a great deal about this case, including the efforts of an unnamed law firm to bring a potential derivative claim against Cahill Gordon.  Moreover, Mr. Cafer's argument that he was somehow mislead by the Bar Order was not raised until his reply to Westar's opposition to his motion to dismiss.  The Court will not revisit its decision on these grounds.

Second, Mr. Cafer cites no authority for his contention that due process demands that the Notice should have stated that there were potential claims against non-parties that were included in the release.  Indeed, a notice of settlement satisfies due process when it is "'reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[17]  Moreover, the "notice provided to the shareholders need not explain to them all the consequences involved in the settlement.  It is not required to provide a complete source of settlement information and the shareholders are not

---

[16]Notice, at 6-7 (emphasis added).

[17]*In re Integra Realty Res., Inc.*, 354 F.3d 1246, 2004 WL 61169, at *10 (10th Cir. Jan. 14, 2002) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

expected to rely on it <u>as such</u>."[18] In *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, the Third Circuit recently rejected the claim that notice was inadequate because it did not specify the release of non-parties because "quoting a release word for word in the settlement notice is sufficient" and due process does not require further explanation of the effects of the release provision in addition to the clear meaning of the words to inform members of the scope and effect of the release.[19]  In this case, the release language in the Notice at a minimum put Mr. Cafer on notice of the broad scope and spurred him to make additional inquiries in the form of his written objection, and of course, his request to be heard.

In this case, the Court preliminarily approved the form of the Notice that informed the shareholders of the nature of the proceedings and claims asserted, the terms of the proposed settlement, the availability of further information if the shareholder so desired, the date, time and location of the settlement hearing, and the right of each shareholder to object and be heard.  The requirements of due process were fully met.[20]

As a corollary argument, Mr. Cafer devotes much of his memorandum to discussion of a proposed action against Cahill Gordon by an unidentified law firm that had purportedly been working directly with Westar through its general counsel.  Perhaps because Mr. Cafer made it clear at the fairness hearing that he did not object to the terms of the settlement, he now attempts to couch this argument in the context of the scope of the release.  Mr. Cafer alluded to this proposed action at the September 1, 2005 hearing.  At the fairness hearing, counsel for the LEC

---

[18]*Maher v. Zapata Corp.*, 714 F.2d 436, 452 (5th Cir. 1983) (emphasis in original).

[19]396 F.3d at 115-16.

[20]*See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993); *Maher*, 714 F.2d at 451.

acknowledged that while there was a tolling agreement between Westar and Cahill Gordon, the committee had not been contacted about a colorable claim against Cahill Gordon and stressed that Mr. Cafer's objection failed to specify any claim against outside advisors, failed to evaluate any such claims, failed to demonstrate the likelihood of success, and failed to do a cost-benefit analysis of those claims.  Rather, counsel for the LEC argued that the "mirage" of some claim against such a third-party consultant is not a basis to turn down an otherwise reasonable settlement, which the LEC negotiated in great part on the basis of Westar's desire to bring an end to this costly and burdensome litigation.

At the fairness hearing, the Court analyzed this issue in the context of whether the settlement as a whole, including the broad release, was fair, adequate and reasonable.  The Court focused on the cost factor, particularly Westar's representation that it had incurred significant costs of litigation, as well as time and resources, with pending litigation involving the criminal case, the ERISA case and the arbitration proceedings.  If Westar were to continue to pursue claims against Cahill Gordon, the claims would be based on the same nucleus of operative facts and the costs would be significant.  The Court stated that based on information presented, it was doubtful that any claim against Cahill Gordon would be beneficial in that it would most likely be even more complicated and difficult than the pending actions against inside defendants.  Moreover, having presided over the two criminal trials against former Westar officers Wittig and Lake, the Court did not find the evidence against outside consultants to be overwhelming or compelling.  Accordingly, the Court concluded that based on the information presented at the hearing, the release of unnamed investment counselors and attorneys did not negate the fairness, reasonableness and adequacy of the settlement.  The Court went on to analyze the Tenth Circuit

factors to be considered in assessing the fairness, reasonableness and adequacy of the settlement, and approved the same.[21]

In his motion to alter or amend, Mr. Cafer continues to refer to an unidentified law firm that he claims had discussed a derivative suit with Westar, but provides no affidavit or factual details with respect to this alleged law suit. Mr. Cafer now asserts in his reply memorandum that the unidentified law firm was working directly with Westar through its general counsel, Larry Irick, that Irick requested that such lawsuit be delayed until after the criminal trial of Wittig and Lake, and that Irick "apparently" did not take the proposed lawsuit to the LEC. To date, despite the Notice of Settlement, Mr. Cafer's objection, the fairness hearing, and numerous briefs filed after the fact, this unidentified law firm has yet to come forward to elaborate on the terms or circumstances of the purported lawsuit against outside advisors. Mr. Cafer has never represented that he was a party to this presentation, only that he was "aware" of the circumstances. These facts, which are not newly discovered evidence, clearly could have been raised at the fairness hearing on September 1, 2005. For whatever reason, they were not. Because this is essentially an attempt to "dress up [an] argument that previously failed,"[22] the Court declines to revisit the issue.

### C.  Motion for Discovery

In conjunction with his reply to Westar's response in opposition to his motion for

---

[21]*Jones*, 741 F.2d at 324 (factors for determining whether a proposed settlement is fair, reasonable and adequate are: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable).

[22]*Jones v. Wildgen*, 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004) (citation omitted).

reconsideration, and more than six weeks after the September 1, 2005 fairness hearing, Mr. Cafer filed a motion to conduct limited discovery.  Cafer requests leave to conduct the deposition of plaintiff's lead counsel, Larry Irick, two Westar board members, at least one member of the LEC, and for production of all records, reports, written opinions, notes or summaries of oral reports or opinions, and other documentation relied upon by the LEC in support of its decision to grant a release to Cahill Gordon and other non-parties.  Mr. Cafer did not move for leave to conduct discovery in his initial objection; at the September 1 fairness hearing, counsel stopped short of making such a motion, stating, "I think that perhaps some further discovery is in order to support what [the LEC is] attempting to do."[23]

"Class members who object to a class action settlement do not have an absolute right to discovery; the Court may, in its discretion, limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement."[24]  "The fundamental question is whether the district judge has sufficient facts before him to intelligently approve or disapprove the settlement."[25]  "The criteria relevant to the court's decision of whether or not to permit discovery are the nature and amount of previous discovery, reasonable basis for the evidentiary requests, and number and interests of the objectors."[26]  "Discovery should be minimal and conditioned on a showing of need, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the

---

[23]Tr. of Sept. 1, 2005, at 31.

[24]*Hemphill v. San Diego Assoc. of Realtors, Inc.*, 225 F.R.D. 616, 619 (S.D. Calif. 2005); *Bell At. Corp.*, 2 F.3d at 1314-15.

[25]*Hemphill*, 225 F.R.D. at 619-20 (citing *In re General Tire and Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1984 n.6 (6th Cir. 1984)).

[26]*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 27 (D.D.C. 2001).

objector's counsel."[27]  The burden is higher when a party seeks discovery of settlement negotiations.  "It is only proper where 'the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.'"[28]

The Court finds that Mr. Cafer's request to conduct limited discovery must be rejected for several reasons.  First, the motion is untimely.  Cafer has not cited, nor could the Court find, any authority permitting discovery in a class or derivative action *after* the objection time had run and *after* the settlement has been approved.  Moreover, Cafer's conclusory statements questioning the independence of the LEC were not made until his reply to Westar's response.[29]  Second, Cafer had ample opportunity to review the discovery obtained by plaintiff's counsel, most of which is public record and referred to extensively in Cafer's motion for reconsideration.  Cafer also had sufficient time to request additional discovery, particularly in light of his claim to have knowledge of an unnamed law firm that had allegedly proposed an action against Cahill Gordon.  Over two months transpired between the Notice and the deadline to object.  Cafer's claim that he lacked sufficient information to realize that Cahill Gordon was to be released is belied by his seemingly extensive inside knowledge of the proposed action against the law firm.  Finally, Cafer focuses primarily on legal issues, specifically subject matter jurisdiction, the development of which would not be facilitated by additional discovery.

**IT IS THEREFORE ORDERED BY THE COURT** that Douglas Cafer's Motion for

---

[27]*Manual for Complex Litigation* § 21.643 (4th ed. 2004).

[28]*Vollmer v. Publishers Clearing House*, 248 F.3d 698, 708 (7th Cir. 2001) (quoting *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987)).

[29]The LEC is comprised of three independent, disinterested Westar directors who joined after former CEO David Wittig's departure.  No shareholder, including Mr. Cafer, objected to the settlement based on the integrity of the negotiation process.

Reconsideration and to Alter or Amend Judgment Approving Proposed Settlement (Doc. 95) as well as his Motion to Conduct Limited Discovery (Doc. 101) and Motion to Strike Portions of Westar's Opposition thereto (Doc. 107) are DENIED.

IT IS SO ORDERED.

Dated this  2nd  day of December 2005.

                                              S/ Julie A. Robinson
                                             Julie A. Robinson
                                             United States District Judge